**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**EUROCRAFTERS, LTD,**

           **Appellant,**

    v.                                                                                      **1:04-CV-855
                                                                                            (GLS)**

**JOSEPH VICEDOMINE; and
TRICIA VICEDOMINE,**

           **Appellees.**
_____

**APPEARANCES:**                                                        **OF COUNSEL:**

**FOR THE APPELLANT:**

Office of Wayne P. Smith                                         WAYNE P. SMITH, ESQ.
157 Barrett Street
Schenectady, NY 12305

**FOR THE APPELLEES:**

Joseph Vicedomine
*Pro Se*
95 Gundrum Point Road
Averill Park, NY 12018

Tricia Vicedomine
*Pro Se*
95 Gundrum Point Road
Averill Park, NY 12018

**Gary L. Sharpe
U.S. District Judge**

# DECISION AND ORDER

## I. Introduction

Appellant Eurocrafters, Ltd. appeals the Bankruptcy Court's (1) grant of partial summary judgment in favor of Appellees, Joseph and Tricia Vicedomine, because the Court declined to give preclusive effect to a pre-petition Virginia state court default judgment; and (2) final judgment, following trial, because the Court held that Eurocrafters failed to meet its burden of proving that its pre-petition claim was excepted from discharge under 11 U.S.C. § 523(a)(2)(A). The Vicedomines seek sanctions against Eurocrafters for filing this appeal. For the reasons that follow: (1) the Bankruptcy Court's decisions are AFFIRMED and Eurocrafters' appeal is DISMISSED; and (2) the Vicedomines' request for sanctions is DENIED.

## II. Background

The Vicedomines were the sole owners and operators of Smugglers Cove, LLC, a Virginia limited liability company. In March 2000, Smugglers Cove entered into a construction contract with Eurocrafters for the renovation of commercial space leased by Smugglers Cove. The contract price was to be paid in lump sums within 150 days of the start of

construction, with interest accruing after the date of completion. After Eurocrafters commenced work, Smugglers Cove did not make the requisite progress payments. On several occasions, the Vicedomines informed George Drosos, Eurocrafters' president, that they would personally pay the amount due by Smugglers Cove. The proceeds would come either from the sale of their personal residence in Reston, Virginia, or from a second mortgage on their investment property in North Carolina. Eurocrafters continued work based on those representations and completed the project on May 6, 2000. The Vicedomines continued to assure Eurocrafters that Smugglers Cove's debt would be paid upon their receipt of proceeds from the properties. Under the belief that payment would be forthcoming, Eurocrafters took no actions to collect the debt, nor did it perfect or enforce any statutory lien rights. In September, Eurocrafters sent Smugglers Cove a statement for an overdue amount of $35,926.20.

In the meantime, the Vicedomines had already refinanced their investment property on May 3, 2000, three days before Eurocrafters completed the work. The Vicedomines had received $70,591.08 in cash, from which they paid $12,000 to Eurocrafters. The Vicedomines had also entered into a financing agreement with Robert Simon, the owner of the

3

commercial space leased by Smugglers Cove, for a loan of $50,000 intended to cover construction costs, which was secured by an unrecorded note and deed of trust on the investment property dated March 15, 2000. Neither transaction was disclosed to Eurocrafters. On October 16, 2000, the Vicedomines sold their residence, but realized no equity. They notified Eurocrafters that the sale generated no funds towards Smugglers Cove's debt, and asked Catherine Drosos, a real estate broker, for assistance with refinancing the investment property. Upon reviewing the documentation provided by the Vicedomines, Drosos learned that the property had already been refinanced in May and was oversecured. Eurocrafters also inadvertently learned of the financing agreement between the Vicedomines and Simon from the latter's attorney, and did not find out about the loan until Simon commenced an unlawful detainer action against the Vicedomines. On December 1, 2000, the Vicedomines, who had signed the contract solely as officers of Smugglers Cove, sent Eurocrafters a letter indicating that they had every intention of repaying Eurocrafters, and offering to pay $1,000 per month pending refinancing of their home.[1]

---

[1] The record is unclear as to the property referred to in the letter, as the Vicedomines had already sold their residence in October.

4

In January 2001, Eurocrafters filed suit in Virginia circuit court, alleging breach of contract against Smugglers Cove and actual fraud against the Vicedomines. Thereafter, Eurocrafters moved for sanctions based on the Vicedomines' failure to respond to discovery requests,[2] and the circuit court entered a default judgment against Smugglers Cove and the Vicedomines. The default judgment was affirmed by the Virginia Supreme Court in December 2002.

In the meantime, the Vicedomines, who had moved to New York, filed for Chapter 7 bankruptcy in this District. Eurocrafters commenced the adversary proceeding below on December 9, 2002, seeking to except the Virginia default judgment from discharge under section 523(a)(2)(A). The Vicedomines filed a motion to dismiss, which the Bankruptcy Court *sua sponte* converted to one for summary judgment. In an oral decision on July 3, 2003, the Court ruled that the issue of fraud was not actually litigated in the Virginia state proceedings and Eurocrafters could not rely on the default judgment for purposes of collateral estoppel. However, to facilitate decision on the merits, the Court considered the allegations of fraud in

---

[2]It appears that upon withdrawal, former counsel for the Vicedomines provided an incorrect mailing address for them; additionally, the Vicedomines moved to New York without notifying the court.

5

Eurocrafters' state court complaint as a second cause of action in the proceedings before it. In July 2003, Eurocrafters filed an amended complaint alleging common-law fraud, and the Vicedomines answered. A trial was held on October 6, 2003, and on June 29, 2004, the Bankruptcy Court issued a decision that Eurocrafters failed to prove that the Vicedomines fraudulently obtained its services. This appeal followed.

### III.  Discussion

**A.  Issues on Appeal**

Eurocrafters (1) challenges as legal error the Bankruptcy Court's refusal to except from discharge the Virginia state court default judgment under the doctrine of collateral estoppel, and (2) contends that the Court's factual findings and legal conclusions are not supported by the evidence.

**B.  Standard of Review**

The court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a). It may "affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013. The court reviews the bankruptcy court's findings of fact under a "clearly erroneous" standard, and its legal conclusions *de novo*. *See* FED. R. BANKR. P. 8013; *In re U.S. Lines, Inc.*, 318 F.3d 432, 435-36 (2d Cir.

2003). In applying the "clearly erroneous" standard of review, a district court may reverse the bankruptcy court only where it is "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Mixed questions of law and fact are reviewed *de novo*. *See In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003) (citations omitted). A court's interpretation of the text of court orders is considered a conclusion of law, and is subject to *de novo* review. *See In Re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000).

**C.   Analysis**

   1.   <u>Collateral Estoppel</u>

Eurocrafters claims that the Bankruptcy Court erred in granting partial summary judgment in the Vicedomines' favor by denying preclusive effect to the Virginia default judgment under the doctrine of collateral estoppel.[3]

---

[3] Eurocrafters appears to interchangeably use the terms *res judicata* and collateral estoppel. To the extent Eurocrafters attempts to argue that the Bankruptcy Court should have given preclusive effect to the default judgment as *res judicata*, its position fails. The *res judicata* doctrine applies to valid, final judgments on the merits, rendered by courts of competent jurisdiction, which are based on the same cause of action between the same parties or their privies. *See Parklane Hoisery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1979). *Res judicata* precludes all claims that might have been litigated between the parties, while collateral estoppel treats as final only issues actually and necessarily decided in a prior suit. *See Montana v. United States*, 440 U.S. 147, 153 (1979). State court judgments are not given *res judicata* effect in bankruptcy proceedings contesting dischargeability of debts based on fraud, over which bankruptcy courts have exclusive jurisdiction. *See Brown v. Felsen*, 442 U.S. 127, 132-38 (1979); *see also In re Gonzalez*, 241 B.R. 67, 72-73 (S.D.N.Y. 1999) (citations omitted); *In re Schriver*, 218 B.R. 797, 801-03 (E.D.Va. 1998); *In re Bretts*, 174 B.R. 636, 643 (Bankr. N.D.Ga. 1994); *In re Supple*, 14 B.R. 898, 902 (Bankr. D.Conn. 1981). Moreover, the

7

The Bankruptcy Court's summary judgment decision and application of collateral estoppel are reviewed *de novo*.  *See In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001); *In re Palmer*, 207 F.3d 566, 567-68 (9th Cir. 2000); *In re Strangie*, 192 F.3d 192, 194 (1st Cir. 1999).  Upon review, there was no error in the Bankruptcy Court's ruling.

The Bankruptcy Court converted *sua sponte*[4] the Vicedomines' motion to dismiss under Rule 12 (b)(6) to one for summary judgment under Rule 56.[5]  Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d

---

cases relied upon by Eurocrafters do not support the proposition that *res judicata* applies to proceedings under section 523(a)(2).  *See In re Genesys Data Techs., Inc.*, 204 F.3d 124 (4th Cir. 2000) (applying *res judicata* under Hawaiian law to claims allowance proceedings in bankruptcy, and recognizing that *res judicata* does not apply in dischargeability determinations involving fraud); *In re Ansari*, 113F.3d 17 (4th Cir. 1997) (applying Virginia collateral estoppel law); *In re McNallen*, 62 F.3d619 (4th Cir. 1995) (applying Texas collateral estoppel law).

[4]*See Groden v. Random House, Inc.*, 61 F.3d 1045, 1052-53 (2d Cir. 1995).  In this case, both the Vicedomines and Eurocrafters supplemented their papers with affidavits and exhibits.  The propriety of the conversion is not challenged.

[5]Applicable to bankruptcy proceedings under FED. R. BANKR. P. 7012 and 7056, respectively.

8

Cir. 1994). A moving party seeking dismissal of the nonmoving party's claims will satisfy its burden "if [it] can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Geonaga v. March of Dimes Birth Defect Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

The doctrine of collateral estoppel applies to discharge exception proceedings under section 523(a) of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 284 & n.11 (1991); *see In re DeTrano*, 326 F.3d 319, 322 (2d Cir. 2003). Under the federal full faith and credit statute, 28 U.S.C. § 1738,[6] the preclusive effect of state court judgments in subsequent federal actions must be determined by the forum state's law of collateral estoppel - in this case, Virginia. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *see In re Sokol*, 113

---

[6]Section 1738 provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738.

9

F.3d 303, 306 (2d Cir. 1997) (citations omitted); *In re Ansari*, 113 F.3d 17, 19 (4th Cir. 1997) (citations omitted).  As explained by the Virginia Supreme Court:

> The doctrine "precludes parties to a prior action and their privies from litigating in a subsequent action any factual issue that actually was litigated and was essential to a valid, final judgment in the prior action ... For the doctrine to apply, [1] the parties to the two proceedings, or their privies, must be the same; [2] the factual issue sought to be litigated actually must have been litigated in the prior action and must have been essential to the prior judgment; and [3] the prior action must have resulted in a valid, final judgment against the party sought to be precluded in the present action ... Additionally, collateral estoppel in Virginia requires mutuality ....

*Transdulles Center, Inc. v. Sharma*, 472 S.E.2d 274, 275 (1996) (internal citations omitted); *see In re Ansari*, 113 F.3d at 19.  The proponent of the prior judgment has the burden to prove the elements of collateral estoppel. *Wright v. Eckhardt*, 591 S.E.2d 668, 670 (2004); *United States v. Davis*, 460 F.2d 792, 796 (4th Cir. 1972); *In re Garey*, 258 B.R. 356, 363 (Bankr. E.D.Va. 2000) (citations omitted).

In this case, the Bankruptcy Court ruled that the issue of the Vicedomines' fraud had not been actually litigated.  It found that the state judgment was entered as a discovery sanction; the record contained no evidence that the issue had been presented to or considered by the state

10

court; and the state court decisions contained no factual findings with respect to fraud. As already noted, one of the requirements under Virginia law is that the factual issues be actually litigated. *Transdulles*, 472 S.E.2d at 275; *see also Angstadt v. Atlantic Mut. Ins. Co.*, 457 S.E.2d 86, 87 (1995). Eurocrafters claims that it submitted *ex parte* testimonial and documentary evidence upon which the state court made findings with respect to fraud. This contention is belied by the record before this court. First, the record contains no transcript of proceedings showing that the state court considered or made any factual findings on the issue. Second, the state default judgment was entered as a sanction,[7] based on the Vicedomines' failure to respond to discovery requests, and more specifically, to appear for depositions. Third, neither the circuit court orders,[8] nor the Supreme Court decision, contain any factual findings with respect to fraud. Thus, the only record of the state court default judgment - the two circuit court orders and the Supreme Court decision - does not

---

[7] Judgment was entered under Va. Sup. Ct. Rule 4:12 which provides, *inter alia*, for entry of default as a sanction for a party's failure to obey a court's discovery order or to comply with its discovery obligations. Thus, based on the parameters of this rule, it would appear that the issue of fraud was not essential to the circuit court's default judgment.

[8] Tellingly, in the order entered October 26, 2001, and probably drafted by counsel, the decretal paragraph purporting to base the Vicedomines' liability upon actual fraud was stricken by the judge.

11

show that the issue of fraud was actually litigated.[9]  Accordingly, upon review, there was no error in the Bankruptcy Court's ruling on collateral estoppel.

### 2. Section 523(a)(2)(A)

Eurocrafters contends that the Bankruptcy Court's findings of fact and rulings are not supported by the evidence.

The Bankruptcy Code excepts debts from discharge that are for "money, property, services ... to the extent obtained by false pretenses, a false representation, or actual fraud ...."  11 U.S.C. § 523(a)(2)(A).  "To sustain a *prima facie* case under Section 523(a)(2)(A) of the Bankruptcy Code, a creditor must establish [that]: (1) the debtor made a false representation; (2) the debtor knew the representation was false at the time it was made; (3) the representation was made with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor was injured by the representation and suffered damages as a result."  *In re Gonzalez*, 241 B.R. 67, 71-72 (S.D.N.Y. 1999) (citations

---

[9]The court notes that both *Transdulles* and *In re Ansari* hold that under Virginia law, a default judgment entered as a discovery sanction may be given preclusive effect under collateral estoppel.  See *Transdulles*, 472 S.E.2d at 275-76; *In re Ansari*, 113 F.3d at 20-22.  However, the record in those cases established that the relevant issues had been sufficiently developed in the prior actions to be considered both actually litigated and essential to the judgments.  Such is not the case on the present record.

omitted); *see In re Owens*, 2005 WL 387258, at *1 -2 (S.D.N.Y. Feb. 17, 2005); *Hess v. Mastrodonato*, 2001 WL 34545898, at *2 (W.D.N.Y. Nov. 19, 2001).  To prevail, a creditor must prove each of the elements of section 523(a)(2)(A) by a preponderance of the evidence.  *See Grogan*, 498 U.S. at 286.  Consistent with the Code's policy of granting a discharge to all but the dishonest debtor, exceptions to discharge are to be strictly construed against the creditor and in favor of the debtor.  *See In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir. 1996); *In re Spar*, 176 B.R. 321, 326 (Bankr. S.D.N.Y. 1994).  "[T]he debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law ... is insufficient." *In re Gonzalez*, 241 B.R. at 71 (citation omitted).  Under the above standard, false representations must have been "knowingly and fraudulently made" and with intent to deceive. *Id.* at 74 (citations omitted).

In this case, the Bankruptcy Court determined that the Vicedomines were not personally liable for the debt, as their letter failed to satisfy the Virginia Statute of Frauds.  Relying on *In re Moran*, 120 B.R. 379, 387 (Bankr. W.D.Va. 1990), the Court then reasoned that the only way Eurocrafters could impose liability on the Vicedomines under section

13

523(a)(2)(A) was by showing that they committed actual fraud under Virginia law[10] sufficient to pierce the corporate veil of Smugglers Cove.

The Court found that the trial testimony of Eurocrafters' president was credible and sufficient to satisfy the first element of fraud.  However, it ruled that Eurocrafters had not established that the Vicedomines intended to defraud it.  The Court found that several factors mitigated strongly against the existence of the requisite fraudulent intent, specifically that the Vicedomines had: (1) informed Eurocrafters that no proceeds were available from the sale of their residence; (2) attempted to work out financing options; (3) sought Drosos' assistance in obtaining refinancing and voluntarily delivered the papers upon which Eurocrafters later based its fraud claim; (4) paid Eurocrafters $12,000 of the refinancing proceeds from their investment property; (5) paid Eurocrafters on several occasions between the time of the oral representations and Eurocrafters' filing suit; and (6) realized no personal gain from Eurocrafters' services as they had lost possession of the subject premises.  The Court also noted that the

---

[10] The elements of actual fraud under Virginia law are indistinguishable from the requirements of section 523(a)(2)(A).  *See Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 581 (2003) ("A cause of action for actual fraud requires the plaintiff to prove: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled").

14

promises to pay occurred prior to the demise of Smugglers Cove, which had been the Vicedomines' main source of income and could not have been foreseen at the time Smugglers Cove signed the contract with Eurocrafters or when the representations were made.  In addition, it found that Eurocrafters suffered neither damage, nor prejudice from the December 2000 letter, as it had already completed the work and had conceded that its only prejudice was a two-month delay in filing the state court action.

Eurocrafters has failed to identify any clearly erroneous finding or legal error.  First, its conclusory single-sentence claim that the Bankruptcy Court erred in finding that the Vicedomines' December 2000 letter memorialized a gratuitous oral promise to pay for a debt they did not owe is unsupported by any cogent argument.  Second, its contention that the Bankruptcy Court failed to address or acknowledge that the Vicedomines stripped their property of any equity and failed to disclose the existence of the unrecorded deed of trust are belied by the Court's decision, which clearly references those facts.  Moreover, this court sees no reason on this record to substitute its own judgment for that of the Bankruptcy Court, which was in the best position to decide what weight to attribute to the

evidence before it. Similarly, Eurocrafters' contention that the Bankruptcy Court misconstrued Virginia law in its application to the representations of the Vicedomines is misplaced.[11] Eurocrafters also points out that under Virginia law, the Statute of Frauds is no bar to a cause of action based on actual fraud. *See Colonial Ford Truck Sales, Inc. v. Schneider*, 325 S.E.2d 91, 94 (1985). However, in attempting to assign error to the Bankruptcy Court, Eurocrafters misconstrues the Court's rationale and holding. The Bankruptcy Court did not apply the Statute of Frauds to the issue of fraud, but instead to its determination that the Vicedomines were not even responsible for Smugglers Cove's contractual debt to Eurocrafters based on the December 2000 letter.[12] The Bankruptcy Court's application of the Statute of Frauds was limited to its evaluation of the letter as a potential guarantee, and does not appear in its analysis of the issue of fraud. In sum, Eurocrafters' arguments are insufficient to warrant reversal of the Bankruptcy Court's decision. Upon review, this court finds no error in the

---

[11]Eurocrafters argues that the Vicedomines' knowing failure to disclose their refinancing and loan constituted actual fraud. Under Virginia law, concealment in general gives rise to a claim of actual fraud. *Norris v. Mitchell,* 495 S.E.2d 809 (1998). However, because the Bankruptcy Court found that the Vicedomines made certain representations and determined that Eurocrafters met the first prong of the applicable standard- i.e. that false representations were made - this argument is of no moment.

[12]An issue that Eurocrafters has not raised on appeal.

16

Bankruptcy Court's rulings or findings of fact.  Therefore, based on the above, the Bankruptcy Court's partial summary judgment decision and final decision and order are affirmed.

### 3. *Sanctions*

The Vicedomines seek sanctions against Eurocrafters.  They contend that Eurocrafters has acted dishonorably and with intent to harass them by filing frivolous charges.  A district court sitting in an appellate capacity may, in its discretion, impose sanctions pursuant to either its inherent authority to control its own proceedings or Bankruptcy Rule 9011.[13]  *See Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 40 (2d Cir. 1993); *French Bourekas, Inc. v. Turner*, 199 B.R. 807, 819 (E.D.N.Y. 1996).  Under the court's inherent authority, sanctions may be imposed for instituting an action or appeal in "bad faith, vexatiously, wantonly, or for oppressive reasons."  *Hirschfeld*, 984 F.2d at 40 (citation omitted); *see In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 517 (2d Cir. 1985).  Upon review of the record, Eurocrafters' appeal, although of questionable merit, is not wholly frivolous, and its conduct does not justify sanctions.  Therefore, the Vicedomines' request is

---

[13] Under Bankruptcy Rule 9011, a document signed by counsel or a party attests that the filing (1) is not interposed for an improper purpose such as harassment, unnecessary delay, or needless increase in the cost of litigation, (2) is not frivolous, and (3) has proper evidentiary support.  FED. R. BANKR. P. 9011.

17

denied.

**WHEREFORE**, it is hereby

**ORDERED** that the Bankruptcy Court's partial summary judgment decision is **AFFIRMED**; and it is further

**ORDERED** that the Bankruptcy Court's final decision and order is **AFFIRMED** and this appeal is **DISMISSED**; and it is further

**ORDERED** that Vicedomines' request for sanctions is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order upon the parties.

Dated:   May 18, 2005
         Albany, New York

*/s/ Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge